## Fidelity Title and Trust Co. *v.* First National Bank of Spring Mills, Appellant.

*Principal and agent—Powers of agent—Burden of proof.*

1. The party who asserts an agent had authority to do a particular act for his principal, has the burden of proving the facts necessary to establish the claim.

*Promissory notes — Negotiable instruments — Sight draft—Acceptance—Act of May 16, 1901, P. L. 194, 213—Notice of theft—Right to arrest wrongdoer—Pleading—Amendment.*

2. Under sections 136 and 137 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, 213, the payee in a sight draft will be deemed to have accepted it unless he returns it within twenty-four hours after presentment.

3. Those dealing with negotiable paper or securities are required to exercise the utmost promptness, diligence and good faith in regard to them; a failure so to do will result in the neglectful party being held liable for any resulting loss.

4. The right to arrest a wrongdoer is a valuable one, and a failure of one dealing with negotiable paper or securities to give due notice of the theft thereof, whereby the real owner, with whom he is dealing, loses all opportunity to exercise this right, is guilty of such negligence as to entitle the owner to recover his entire loss.

5. Under such circumstances the courts will not weigh or permit a jury to consider whether or not anything might have been recovered if the wrongdoer had been arrested.

*Personal property—Right of possession—Trover and conversion.*

6. One who is lawfully entitled to the possession of personal property, may maintain an action for its loss as against everybody but the real owner, and hence a defendant who has obtained possession of it from such party, has no concern in the question of actual ownership, unless his defense turns upon points involving the personal conduct of the true owner or those who preceded him in title.

7. Demand and refusal are only evidence from which a conversion may or may not be found, depending upon the circumstances of the particular case.

8. Where it appears that property has been lost through negligence only, and not by reason of any tortious act, the question of conversion by the one whose neglect caused the loss, is a matter of fact for a jury to decide and not one of law for the court.

*Appeals—Harmless errors—Amendment to pleadings.*

9. An appellate court will not reverse a judgment and remit a case for re-trial because of an error made by the court below, if it is certain the same judgment will have to be entered by that court, after an allowable amendment of the pleadings; in such cases the judgment will be affirmed without costs.

Argued April 17, 1923. Appeal, No. 304, Jan. T., 1923, by defendant, from judgment of C. P. Centre Co., Sept. T., 1922, on verdict for plaintiff, in case of Fidelity Title & Trust Co. v. First Nat. Bank of Spring Mills. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass in trover and conversion. Before QUIGLEY, P. J.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for plaintiff for $5,-183.88. Defendant appealed.

*Error assigned,* inter alia, was in directing verdict for plaintiff, quoting record.

*S. D. Gettig* and *N. B. Spangler,* with them *Ivan Walker* and *John J. Bower,* for appellant.—To maintain his action it is essential for a plaintiff in trover and conversion to show that the right of property was in him at the time he commenced his action: Moorhead v. Scofield, 111 Pa. 584.

Defendant may show title in a third party: Knapp v. Miller, 133 Pa. 275.

A bank, with which commercial paper is left by its customer to be transmitted for collection, is the agent

of the owner for transmission only, and is not liable for the negligence or default of its correspondents or agents to whom it is necessary to transmit the paper, if it used reasonable care and diligence in the selection of its agent: Farmers National Bank of Beaver Falls v. Nelson, 255 Pa. 455; Hazlett v. Bank, 132 Pa. 118; Nat. Bank of Phoenixville v. Bonsor, 38 Pa. Superior Ct. 275.

While demand and refusal is sometimes evidence of conversion, it is not of itself a conversion; and especially is this true where the goods were no longer in the possession of the defendant at the time the demand was made: Spear v. Alexander, 2 Phila. 89; Bunting v. Dessaw, 9 Phila. 31.

A mere depositary without special contract or reward, is liable for the loss of the deposit only in case of gross negligence, which is equivalent to fraud: Scott v. Bank, 72 Pa. 471.

*John Blanchard,* with him *William H. McClung, Park J. Alexander* and *Edmund Blanchard,* for appellee.—An action of trespass in the nature of trover and conversion for the conversion of these United States coupon bonds, payable to bearer, brought by a proper plaintiff, will lie: Neiler v. Kelley, 69 Pa. 403; Harger v. M'Mains, 4 Watts 418; Sewall v. Lancaster Bank, 17 S. & R. 285; Hay v. Bank, 249 Pa. 543; Brown v. Clark, 14 Pa. 469, 479; Bookmyer v. Davies, 69 Pa. Superior Ct. 240, 242; Ward v. Tyler, 52 Pa. 393; Farmers, etc., Bank v. Bank, 123 Pa. 283; Sterling v. Trading Co., 11 S. & R. 179; Lyle v. Barker, 5 Binn. 457; Penna. R. R. v. Farrell, 64 Pa. Superior Ct. 296.

The essence of conversion is not acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner; and consequently neither manucaption nor asportation are essential elements thereof: Dixon v. Owens, 21 Pa. Superior Ct. 376; Nat. Bank of Commerce v. Bank, 91 U. S. 92; Dows v. Nat. Exchange, 91 U. S. 618.

A person dealing with an agent is bound to ascertain the extent of the agent's authority, and this is particularly the case in dealing with him for the first time: Lauer v. Schmidt, 24 Pa. Superior Ct. 396, 403; Dodge v. Williams, 47 Pa. Superior Ct. 302, 305; Interstate Securities Co. v. Bank, 231 Pa. 422.

OPINION BY MR. JUSTICE SIMPSON, May 14, 1923:

At the instance of E. C. McFeaters (who falsely represented he was acting for defendant in this regard), Moore, Leonard & Lynch, purchased $5,000 par value of unregistered coupon bonds, and handed them to plaintiff, as collecting agent, to be forwarded to defendant, with a sight draft as follows:

"Moore, Leonard & Lynch, Bankers & Brokers,

Pittsburgh, Pa., May 24, 1922.

At sight..............................with exchange pay to the order of Fidelity Title & Trust Co...........

Five thousand twenty-seven and 78-100........dollars $5,000 Lib. 4-4 1/4's attached

First National Bank,

| | |
|---|---|
| Spring Mills, | Moore, Leonard & Lynch |
| Centre Co., Pa. | By John Garrett." |

Plaintiff, the payee named, endorsed it:

"Pay any bank, banker or trust company, or order, for collection and remittance to Fidelity Title & Trust Co.,                Eugene Murray, Treasurer."

and sent it to defendant by registered mail, accompanied by this letter:

"Fidelity Title & Trust Co.

Pittsburgh, Pa., May 24, 1922.

First National Bank, Spring Mills, Centre Co., Pa.

I enclose for collection and return credit items as below.        Yours truly,        Eugene Murray, Treasurer.

On whom drawn

| You | Amount |
|---|---|
| 1 sight draft | $5,027.78 |
| 5000 L. L. Bonds | plus exchange." |
| attached. | |

The next afternoon, defendant's teller received and receipted for both these papers, and, on the morning of May 26, 1922, delivered them to the cashier of the bank. McFeaters, with whom defendant had had prior dealings, called at the bank, falsely stated that the bonds had been sent for his account, and when the cashier placed them within easy reach, picked them up and walked off with them, saying he would be back a few days later and settle for them.

Apparently relying on this promise, defendant made no attempt to apprehend him, or to recover the bonds or their value, nor did it advise plaintiff or Moore, Leonard & Lynch of the loss. On May 29, 1922, McFeaters, in a telephone conversation with defendant's cashier, again told the latter he was coming down in a few days to settle for the bonds. Neither plaintiff nor Moore, Leonard & Lynch learned of the theft until June 6, 1922, when the latter called up defendant on the telephone, and in the course of the ensuing conversation was so told by its cashier. In the interim McFeaters had disappeared and there was no possibility of a recovery from him.

Both before and after it knew of the theft, plaintiff requested defendant to pay the draft or return the bonds; all these demands being ignored, the present action of trover and conversion was brought, and, from the judgment on an instructed verdict for plaintiff, this appeal was taken. Defendant avers that whether or not it was liable in that form of action was, under the evidence, for the jury and not for the court, and this raises the principal question in the case.

In its affidavit of defense, defendant averred that Moore, Leonard & Lynch were the real owners of the bonds (which is true), and that they connived with Mc-Featers in relation to this matter, insinuating, but not averring, that the two were engaged in a conspiracy to defraud. No evidence was offered to sustain this unpleasant intimation; but it was shown that a few days after the bonds were stolen some unrecognized person,

supposed to be connected with Moore, Leonard & Lynch, said telephonically to one of defendant's directors "Mc-Featers was in their [firm's] employ on trial for a week" and to its cashier that, in another and later transaction, he was "their agent." If we were to assume that these statements would have justified a finding that he was Moore, Leonard & Lynch's employee or agent at the time he stole the bonds from defendant, it would not aid the latter, for there was no evidence he had any express or implied authority to take the bonds, and it had the burden of proving this necessary fact in its defense: Interstate Securities Co. v. Third National Bank, 231 Pa. 422.

Appellant also avers it had not authorized the purchase of the bonds, and was unaware of the transaction until the papers were received. This being so, it knew, as soon as they were delivered to it, that a mistake had been made; from inspection it also knew the draft was a sight draft which it should honor or dishonor within twenty-four hours, if it did not wish to "be deemed to have accepted" it (sections 136 and 137 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, 213); and it knew further that the bonds were of such a character their mere possession, by an innocent holder for value, would possibly give a good title to them, even though purchased from one who was later shown to be a thief. These facts called upon defendant to act with the "utmost promptness, diligence and good faith" after it received the draft and bonds (Iron City National Bank v. Fort Pitt National Bank, 159 Pa. 46, 49), in each of which respects, however, it wholly failed, and hence made itself liable for the resulting loss.

Moreover the failure to give timely notice of the stealing of the bonds leads to the same conclusion. If defendant did not intend to become responsible for their value, it should have given immediate notice of the theft to plaintiff or Moore, Leonard & Lynch. If it had done so, McFeaters might have been arrested and the bonds or their value recovered. This opportunity was lost by

defendant's silence, and the courts will not weigh, nor permit a jury to consider, whether or not anything might have been thereby recovered (Leather Manufacturers National Bank v. Morgan, 117 U. S. 96; McNeely v. Bank of North America, 221 Pa. 599), but will require defendant, because of its neglect in this respect, to make good the entire loss.

Nor is there any real doubt but that plaintiff had such a special interest as entitles it to maintain the action. It had a right to the possession of the bonds as against everybody but Moore, Leonard & Lynch, and had a duty of accounting to the latter for its handling of them; defendant wholly failed to prove anything which would have relieved it from liability if it had been sued by that firm, and hence "has no concern in the question of actual ownership, [since] the defense [does not] turn upon points involving the personal conduct of the true owner, or those who preceded him," and this is so although plaintiff "was a mere collecting bank": Brown v. Clark, 14 Pa. 469; Farmers Deposit National Bank v. Penn Bank, 123 Pa. 283, 291; Gunzburger v. Rosenthal, 226 Pa. 300.

We are thus brought to the important question in the case, viz: Was the court below justified in giving binding instructions for plaintiff, in view of the fact that this was a suit in trover and conversion? If nothing further had been shown except the receipt of the bonds by defendant, and its refusal to return them on demand, of course the action would lie. But demand and refusal are only evidence from which a conversion may or may not be established, depending on the circumstances of the particular case (Blakey v. Douglass, 3 Sad. 495; 38 Cyc. 2031; 26 Ruling Case Law 1124); hence, when, as here, it could have been found by the jury that before demand made the bonds had been stolen, as a result of negligence only and not by reason of any tortious act, the question of conversion became a matter of fact for that tribunal to decide, and not of law for the court: Dearbourn v.

Union National Bank, 58 Me. 273; Bowers on Conversion, section 317; 26 Ruling Case Law 1112.

It does not follow, however, that we must reverse the judgment because of this error. On its own showing defendant is liable to plaintiff in a proper form of action, and the change thereto may yet be made by an amendment in the present case. The right to maintain this kind of suit was raised in the affidavit of defense, but barely referred to at the trial. If it had been insisted upon at that time, it is not unlikely an amendment would have been applied for and granted, for, since defendant is a corporation, plaintiff can gain no advantage by a judgment in this action rather than in assumpsit or negligence; and, except as regards the costs, defendant will lose nothing if an amendment is made. In any event, however, it would be useless to reverse and send the case back for a retrial, with an amendment then allowable and a verdict for plaintiff inevitable; hence we will consider the amendment as if made, and affirm the judgment, but without costs in either court.

Judgment affirmed, plaintiff to pay its own costs in the court below and here.