## Adair v. Paul & Co., Inc., et al.

*Robert B. Ely, 3rd,* for plaintiff.

*Philip H. Strubing* and *Herbert A. Barton,* for defendants.

WINNET, J., June 13, 1941.—Plaintiff, William C. Adair, is seeking in these proceedings to learn what became of $2,000 he gave to defendant Elwood B. Story, Jr., an agent of defendant Paul & Co., Inc., a security dealer, for the purpose of investment. He alleges that he is advised that a portion of the $2,000 was converted by Paul & Co., Inc., for its own purposes, and a portion was paid by Elwood B. Story, Jr., to defendant Frank Rodenbach in discharge of a claim of Rodenbach against defendant company. Having demanded an accounting

of this investment of defendants, plaintiff seeks to learn definitely what became of the $2,000 and to compel defendants to return it to him, or any property which may have been acquired by them through his $2,000.

Defendant Elwood B. Story, Jr., filed neither an appearance nor an answer and plaintiff is entitled to a decree pro confesso as against him. Defendant company has denied that Story acted for it in this transaction, and has denied any authority in him to receive the $2,000 or make any representation regarding any prospective investment. It denied further it received any moneys belonging to plaintiff. Defendant Rodenbach denied that he had any knowledge of this transaction and denied receiving any money belonging to plaintiff. . . .

## Discussion

This case poses a simple problem. The villain of the suit has robbed Peter to pay Paul. How far can equity go to make Paul pay back to Peter the money which he has received?

Plaintiff, a butcher by trade, knew defendant Story and his family for many years, and knew he was employed by defendant Paul & Co., Inc. In October 1940 Story called on plaintiff at his store and sold him on a "wonderful" proposition — of investing with him $2,000, upon his guaranty that plaintiff would make a profit of 20 percent in 30 days. Plaintiff was so taken in that he did not even ask the name of the investment and only sometime after he had borrowed the $2,000 from a bank and had handed over to Story a cashier's check for that amount, endorsed in blank, did he find out that he was investing in the stock of a munitions plant, still unnamed. Story, having deposited the money in his bank account, then proceeded to pay his personal obligations to his employer, Paul & Co., Inc., and to defendant Rodenbach.

Plaintiff predicated his action in the first instance on the contention that he was dealing with Story as agent

of defendant Paul & Co., Inc., and it should be responsible for the money handed over for investment to its agent. The evidence, however, does not justify any finding that, agent though he was at the time of the transaction, plaintiff was dealing with him as agent, or that he relied on any apparent authority of Story to bind his company.

Plaintiff and Story were good friends of some 20 years' standing; Story and his family were customers of plaintiff. The transaction took place in the butcher shop. Plaintiff listened and accepted a proposition made to him by his friend Story. I cannot accept his contention that he dealt with him as agent because in September 1936 defendant company, through Story, sold for him $78.26 of stock, and bought for him $73.75 worth of stock, two days later. He admitted in these instances he received confirmation from the company and that this time he did not. Instead of inquiring from the company he kept telephoning Story. And a month later when the company, in an effort to check Story's accounts, sent to all his customers and to plaintiff a statement showing that their books revealed the company owed plaintiff nothing, he signed and returned to the company the statement as correct. This conduct showed that he was relying on Story and far outweighs his words in the present suit that he dealt with him as Paul & Co.'s agent.

Even if the facts did not justify a finding that plaintiff dealt with Story as an individual rather than as an agent, certainly nothing has been shown which would warrant a finding that in this transaction Story acted either under the actual or apparent authority of his principal. A plaintiff who asserts an agent has authority to do a particular act for his principal has the burden of proving the facts necessary to establish the claim: Fidelity Title & Trust Co. v. First National Bank of Spring Mills, 277 Pa. 401. It is a universally recognized doctrine that when one deals with an agent he is bound to ascertain the nature and extent of the

agent's authority. He may not trust to a mere presumption of authority, or to any mere assumption of authority by the agent, but must trace the authority to its source if he would be protected: Interstate Security Co. v. Third National Bank, 231 Pa. 422, 429.

The doctrine of apparent authority cannot help plaintiff. Under section 8 (*a*) of the A. L. I. Restatement of Agency it is stated that an apparent agent is a person who, whether or not authorized, reasonably appears to third persons, because of the manifestations of another, to be authorized to act as agent for such other. I cannot find as a fact that, because of anything Paul & Co., Inc., did, plaintiff could reasonably assume that Story had authority to sell for it an unnamed investment proposition that would yield him a return of 20 percent within 30 days. A reasonable person should have been put on some inquiry; a reasonable person does not deal with a stock brokerage concern in his own butcher shop; a reasonable person does not hand over a cashier's check of $2,000 endorsed in blank.

The law cannot protect such a foolish person when he is making a claim against an innocent third person. In Mahaffey v. Ferguson, 156 Pa. 156, the Supreme Court cites Chancellor Kent's Commentaries and says (p. 169) :

"Chancellor KENT . . . has justly said that the law does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information."

In Emery v. Third National Bank of Pittsburgh, 308 Pa. 504, Mr. Justice Maxey makes the following quotation (p. 518) :

" 'Since a defrauded party should make a reasonable effort to avoid injury, he cannot recover damages which could have been avoided by reasonable care and are therefore to be regarded as not proximately due to the fraud': 27 C. J., p. 85, section 230. 'One must not

suffer himself to become an indolent victim of fraud':
Stedman v. Boone, 49 Ind. 469."

Finding as we do that plaintiff dealt with Story as
an individual and not as an agent, we proceed with the
real problem of the case. Story has defrauded plaintiff
and he has used plaintiff's money to pay back moneys
which he owed defendants. Shall defendants be com-
pelled to disgorge those moneys?

The solution would be simple if defendants knew of
Story's fraud. I find as a fact, however, that defendants
had no notice of Story's breach of trust or his fraud;
they acted in good faith. Story handed to each of the
defendants his own personal checks; these checks were
negotiable instruments. The law does not impose a
trust on money or negotiable instruments which have
reached the hands of a bona fide purchaser. The fact
that the checks were delivered to defendants in satisfac-
tion of an antecedent debt does not destroy their posi-
tion as bona fide purchasers. Section 304(2) of the
A. L. I. Restatement of Trusts provides:

"If the trustee transfers trust property in considera-
tion of the extinguishment in whole or in part of a pre-
existing debt or other obligation, the transfer is for
value if (a) the trust property transferred is a nego-
tiable instrument or money".

The reporters of the Restatement say in comment
(b) (p. 932):

"A person who receives a negotiable instrument or
money in payment of a pre-existing debt or other obli-
gation is a transferee for value. By the Uniform Nego-
tiable Instruments Law, §25, it is provided that 'An
antecedent or pre-existing debt constitutes value; and
is deemed such whether the instrument is payable on
demand or at a future time.' "

A check directing a drawee bank to pay to the payee
or his order a stated sum of money is a bill of exchange
payable on demand and is a negotiable instrument:
Negotiable Instruments Act of May 16, 1901, P. L. 194,

sec. 126, 56 PS §301. See Thomas v. Berger, 118 Pa. Superior Ct. 422, 424.

The same result would be reached in considering the rights of plaintiff against defendants under the principles in the A. L. I. Restatement of Restitution. A constructive trust would arise in favor of plaintiff against Story's bank account after he deposited plaintiff's check. Section 160 of the Restatement, in comment (g), which discusses the enforcement of the trust against transferee from constructive trustee, says: ". . . the constructive trust is cut off if the property is transferred to a bona fide purchaser." And then in sections 172 and 173 it confers the benefit of a bona fide purchaser upon a person who takes a negotiable instrument or money from a constructive trust in satisfaction of a pre-existing debt or other obligation. See comment (n) under section 173 of the A. L. I. Restatement of Restitution, p. 706.

Plaintiff has contended that defendants have shown no change of position by reason of the receipt of this money and they would not be injured if required to return the money to the defrauded plaintiff. The fact that the law classifies defendants as bona fide purchasers is one answer to this contention. And the second is that it does not follow that these defendants would be in the same position they were immediately before payment was made to them if they were directed to return the moneys to plaintiff. It is evident that Story is unable to pay his debts to plaintiff. If he could the judgment to be entered against him would save plaintiff harmless. These defendants have received these checks in the ordinary course of business; they may have made other commitments on the strength of the money they received. It is of the utmost public importance that people who receive cash or negotiable instruments in good faith and in ordinary course of business should be able to carry on their businesses and their affairs and be protected by law. Commerce should not be hampered by a rule which would require a payee

at his peril to accept money or the equivalent of money such as a negotiable instrument.

"That the world may progress, a medium of exchange is an imperative necessity, and that medium of exchange must be as free and clear of limitations or conditions affecting the passing of it from one to the other as it is possible for human ingenuity to make it, taking into consideration only common honesty": Farmers & Manufacturers National Bank v. Pocono Manor Assn., 17 D. & C. 621, 623 (1932).

The honesty of defendants Paul & Co., Inc., and Frank Rodenbach, at the time they received the checks from defendant Story, cannot be questioned. In Union Bank & Trust Co., to use, v. Girard Trust Co., 307 Pa. 488, the court said that bad faith is not a matter of conjecture. Mere failure to make inquiry, even though there are suspicious circumstances, does not constitute bad faith unless such failure is due to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a vice or defect in the transaction, that is to say, where there is an intentional closing of the eyes or stopping of the ears. There was nothing on the face of the checks which Story gave to defendant company and to Rodenbach which would lead either of them to suspect his fraudulent action.

Plaintiff has stressed Erie Trust Company's Case (No. 1), 326 Pa. 198. It has, however, no application to the facts involved in this suit. The problem there, unlike the problem here, is the right of the cestui que trust against the cash or proceeds of cash in the hands of the trustee, or the person who is standing in the position of the trustee. The case did not involve the rights of the cestui que trust as against cash or commercial paper received by a third person for value. So, too, Erie County et al. v. Lamberton et al., 297 Pa. 406, does not help plaintiff. The third party who received the payment from the trust violator had knowledge from the face of the check that county money was being used by the violator to pay his own debts.

The problem which we posed in the beginning of the discussion must be answered in favor of defendants Paul & Co., Inc., and Frank Rodenbach. In other words, even though Peter has been robbed, if Paul took cash or negotiable instruments without any notice and for value he is not required to pay it back.

The rights of plaintiff against defendant Story should be adjudicated. A decree pro confesso is not the solution as against him. It appears definitely that he no longer has the $2,000 which he took from plaintiff. Plaintiff, however, is entitled to a money judgment for that amount against defendant Story. Having assumed equity jurisdiction of the controversy, we should dispose of every subject embraced within the circle of the contest even though some matters so determined might not have originally been the subject of equity jurisdiction: Bowman v. Gum, Inc., et al., 327 Pa. 403; Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc., et al., 330 Pa. 336; Rothstein, to use, v. Jefferson Ice Mfg. Co., 137 Pa. Superior Ct. 298.

Plaintiff is entitled to a judgment against defendant Elwood B. Story, Jr., in the sum of $2,000 with interest from October 16, 1940. The bill of complaint should be dismissed as against defendants Paul & Co., Inc., and Frank Rodenbach. . . .