## Mehaffy *against* Lytle.

One who attends to the trial of a cause, not as a party, but upon notice by the defendant, because of a liability, the amount of which will be affected by the verdict and judgment, may give evidence to lessen or defeat a recovery ; if he neglect to give such evidence, he will not be permitted afterwards to give it in an action directly against himself, by the defendant in the first suit.

When the rules of court require a defendant to give notice to the plaintiff of special matter, which he intends to rely upon as a defence, and such notice is not given, the evidence should be rejected.

An action on a bond of indemnity, given by one to two, when one has alone been damnified, is rightly brought in the name of both the obligees for the use of the one ; and declaration is not vitiated by a particular relation of the use, nor by the conclusion that the refusal of the defendant to pay was to the damage of one.

APPEAL from the circuit court of *Lancaster* county, held by Chief Justice *Gibson.*

This was an action of debt on bond, by *James Mehaffy* and *James Duffy* for the use of *James Duffy*, against *Joseph Lytle* who survived *John Pedan ;* all the facts of which are fully stated by his honour, who delivered the opinion of the court.

*Champneys* and *Morris*, for appellants.

*Montgomery* and *Hopkins*, contra, whom the court declined to hear.

The opinion of the Court was delivered by

KENNEDY, J.—This cause was tried lately at a circuit court held before his honour, the chief justice, for Lancaster county, and has been brought here by an appeal taken on the part of the defendant. It is an action of debt brought on a bond dated the 19th day of July 1815, executed by *John Pedan* as principal, who died before the action was commenced, and *Joseph Lytle*, the defendant, as the surety of *Pedan*, to the plaintiffs, *James Mehaffy* and *James Duffy*, in the sum of 7233 dollars and 41 cents. The bond with its condition, and all the facts and circumstances connected with it, and which have given rise to this suit, are stated and set out in the declaration. From this, it appears, that *John Pedan, James Mehaffy, James Duffy* and *Henry Share*, as principals, and *Henry Cassel* and *George Snyder* as sureties for *James Mehaffy* and *James Duffy*, and *Joseph Lytle* as surety for *John Pedan, Henry Share* giving no surety, all joined in giving a bond, dated the 6th of April 1813, to *Frances Evans*, upon which there remained at the time of giving the bond in suit, a balance due of 14,466 dollars and 86 cents, one-fourth of which was to be paid, as it was then agreed, by *John Pedan*, as his proportion of it ; the obligors named in the bond to Mrs *Evans*, being bound to her jointly and severally, for the payment of the 14,466 dollars and 86 cents. The bond in suit was given by *John Pedan*, with *Joseph*

[Mehaffy v. Lytle.]

*Lytle* as his surety, for the purpose of keeping *James Mehaffy* and *James Duffy*, the plaintiffs in this action, indemnified against paying *John Pedan's* one-fourth of the debt due to Mrs *Evans*, and against all damages, costs and charges which might accrue or arise on account of *John Pedan's* failing to pay it.    Mrs *Evans* brought a suit upon her bond against *John Pedan*, *James Mehaffy*, *James Duffy*, *Henry Share*, *Henry Cassel*, *George Snyder* and *Joseph Lytle*, in the court of common pleas of Lancaster county, to November term 1815, in which she obtained a judgment on the 26th of January 1816, against all of them, excepting *James Mehaffy*, upon whom the writ of summons was not served, by the direction of Mrs *Evans*, the plaintiff therein, for some cause.    The real estate of *Henry Share*, one of the defendants in the judgment, was afterwards taken in execution and sold by the sheriff; and out of the money arising from this sale, the balance due to Mrs *Evans* upon her judgment, being in amount upwards of 9300 dollars, was paid.    *Henry Share* being indebted to *Henry Haines*, and knowing that a great deal more than his proportion of the debt due to Mrs *Evans*, had thus been paid out of the proceeds of the sale of his property, assigned to *Henry Haines* the claim which he had for contribution against his co-principal obligors.    At this time *John Pedan* had become insolvent, and had failed, as was alleged, to pay any part of his one-fourth of the sum due to Mrs *Evans*, at the date of the bond in suit.    *Henry Haines*, therefore, brought a suit to June term 1827, against *James Mehaffy* in the name of *Henry Share*, for his own use, in the district court of Lancaster county, to recover from *Mehaffy* his contributory part of the loss which had accrued through the insolvency of *John Pedan*.    This suit, after having been removed into the circuit court, and after notice given by *James Mehaffy* to *Joseph Lytle*, the defendant in this present suit, to appear and defend, who accordingly attended to the trial, was tried, and a verdict and judgment rendered in favour of *Henry Share*, for the use of *Henry Haines*, for 2546 dollars.    See this case reported in *2 Penns. Rep.* 361.    *James Mehaffy* paid this sum of money, and brought this action to have it reimbursed to him.

On the trial of this cause the defendant, among other things, offered to give in evidence certain articles of agreement entered into on the 4th of October 1813, between *James Anderson* of the one part, and *Henry Share* of the other part; whereby *Anderson* agreed to sell and convey certain land therein described to *Henry Share* in fee, upon his paying 100,000 dollars.    Upon the back of the articles it appeared by indorsements, that *Henry Share* paid on the 15th of October 1813, 11,000 dollars, and again on the 12th of September 1814, 4000 dollars.    Also certain other articles of agreement entered into on the 8th of the same October, between *Henry Share* and *James Mehaffy*, *John Pedan*, *Matthias Rouck*, *James Duffy* and *John Haines*, whereby *Henry Share* agreed that each of those persons last named should become equally interested with himself in the purchase of the land set forth in the first articles of agreement, upon their paying each an

equal proportion of the purchase money, which they respectively bound themselves thereby to do; and all further thereby agreed to become partners, and to participate equally in the loss or profit attending the same, as it might happen.   And likewise offered to prove further, in connexion with the foregoing articles of agreement, that *James Mehaffy* had received from *Henry Share* his full purpart of the property for which the agreement of purchase was made with *James Anderson*, and that the residue of it was afterwards levied on and sold as the property of *Henry Share* by the sheriff; that subsequently to the purchase of the land from Mrs *Evans*, which formed the consideration of the bond that was given to her on the 6th of April 1813, in which *Pedan, Mehaffy* and. others were bound as already stated, and to which the bond upon which this suit is founded has a reference, that *John Pedan, James Mehaffy* and *James Duffy* laid out the land purchased of Mrs *Evans* into town lots, which were sold by lottery, and *James Mehaffy* appointed treasurer, to receive the moneys arising therefrom, for their joint use; that he received 10,000 dollars, which he applied towards payment of Mrs *Evans's* bond, and thereby obtained his absolute discharge from it.   And that on the 15th of August 1818, *Joseph Lytle*, the defendant in this case, paid 1000 dollars to Mrs *Evans* on her bond, as the surety of *John Pedan*.   All this evidence so offered to be given was objected to by the plaintiff's counsel, and overruled by the court, and is made the ground of the first, second and third reasons assigned by the defendant for his taking his appeal to this court.

It is very apparent that so far as any part of the evidence thus offered, tended to show that *Henry Share* had received money belonging to *John Pedan*, which he had not accounted for or paid over to him before the commencement of the suit in his name, by *Henry Haines* against *James Mehaffy;* or that *Joseph Lytle* had paid money as the surety of *John Pedan* to Mrs *Evans* upon her bond before that time; it might have been given in evidence by way of defence in that suit: and as *Joseph Lytle* had full notice given to him by *James Mehaffy* of that suit being brought, and that he must defend it; and as it was proved, indeed, by his own witness, General *Porter*, that he did attend to the trial of it; it was incumbent on him to have given that evidence then, if he ever intended to offer it; because, unless given then, it could in no wise relieve *James Mehaffy* afterwards; and this was what *Joseph Lytle* had undertaken by his bond to do.   By the express terms of the condition of this bond, he was bound to keep *James Mehaffy* indemnified against the delinquency of *John Pedan;* and if *Pedan's* share of the bond to Mrs *Evans* was paid by *John Pedan* himself, by *Joseph Lytle*, or by any other than *Henry Share*, before it was paid out of the money arising from the sale of his estate, *Joseph Lytle* ought to have shown it on the trial of the suit against *James Mehaffy;* because, by omitting to do so, he made *James Mehaffy* liable, inevitably, to pay it again, and he shall not be permitted to take advantage of his own neglect of duty to prejudice *James*

*Mehaffy,* contrary to the condition of the bond which is in suit: and beside, *Joseph Lytle* was as much a party to that trial as *James Mehaffy,* and is thereby estopped in like manner to gainsay the correctness of the judgment rendered.

As to the articles of agreement between *James Anderson* and *Henry Share,* and again between *Henry Share* and *John Pedan,* *James Mehaffy* and others, I can not perceive the relevancy or bearing of them in this cause. It was not proposed to prove that *John Pedan* ever paid a cent towards this purchase of *James Anderson.* The only money, amounting to 15,000 dollars, which appeared to have been paid upon it, was paid by *Henry Share,* according to the indorsements entered upon the articles of agreement. This might show that *Henry Share* had some substantial interest in the land which might have been taken in execution and sold for his debts, but could vest no real interest in *John Pedan,* and would not have made it admissible if it had, for the reasons given. And the fact of *James Mehaffy* having got a conveyance for part, was some evidence perhaps of his having paid his proportion of the purchase money; but certainly not any, that *John Pedan* had ever paid any part of his; and therefore could neither give *John Pedan* any real interest in the property, nor form any objection, that I can see, to *Joseph Lytle's* indemnifying *James Mehaffy* according to the tenor of his bond, and the condition thereof. It could not in the slightest degree go to show that *Mehaffy* had either money or property belonging to *John Pedan* in his hands or under his control, out of which he might or could have satisfied the judgment either in part or in whole, obtained against him at the suit of *Henry Share.* And in respect to that part of the offer which related to the sales of the town lots, and the receipt of the moneys arising from them by *James Mehaffy,* it appears to me, in the first place, that it was too indefinite; for if it happened before the giving of the bond in suit, the presumption would be, that so far as *John Pedan* had an interest in it, it was settled for at or before that time; for *Mehaffy* could not with any propriety have asked *John Pedan* for an indemnity against the payment of his proportion of Mrs *Evans's* bond when he had funds of *Pedan* in his own hands, with which he could do it; nor can it be believed that *John Pedan* under such circumstances would have given this bond of indemnity. But if it were intended to show that *James Mehaffy* had received such moneys after the giving of the bond in suit, then, I think, as the receipt of their moneys had no connexion with the object of the bond in suit, and as it was not proposed to prove that *James Mehaffy* had any directiom from *John Pedan* to apply his portion of the money so received to the payment of his proportion of the sum due on Mrs *Evans's* bond, it might have taken the plaintiffs by surprise, and have done them great injustice to have admitted the evidence without the defendant's having given a previous notice in writing of his intention to do so on the trial of the cause; for had such notice been given to *James Mehaffy,* he might

have been prepared possibly to have shown that all the money so received by him had been accounted for, and applied otherwise by the direction of *John Pedan.* I therefore think that the chief justice was clearly right in overruling this part of the evidence offered, because previous notice in writing had not been given, according to the rule of court on the subject. And if *James Mehaffy* obtained any discharge from Mrs *Evans* that could have discharged him from the suit which *Haines* brought in the name of *Henry Share* against him, it was not pretended that he concealed it from the defendant in this action or from any of his co-obligors named in the bond to Mrs *Evans,* or that it was not known to *Joseph Lytle* on the trial of the cause by *Share* against *Mehaffy,* as well as it is now ; and that was the time to have set it up as a defence in order to indemnify *Mehaffy ;* but if the discharge was not such as would have discharged *James Mehaffy* from the claim of *Henry Share,* after Mrs *Evans* had obtained a judgment against *Share* and all his joint co-obligors, including the defendant himself in this action, with the exemption of *Mehaffy,* on whom the writ was not served, and who does not appear to have known any thing about the suit and the judgment had in it—and I confess that I am at a loss to conceive what kind of a discharge it must have been to have had such an effect—it could avail nothing in either suit, and was therefore inadmissible.

These remarks are sufficient to dispose of the three first reasons ; and the fourth remains now to be considered, which is, as I understand it, an objection to the plaintiffs' declaration, that it does not set forth such a cause of action as shows that the plaintiffs are entitled to recover in this case.

It is first objected, that it declares the suit is " *for the use of James Mehaffy, so far as relates to his interest in the bond.*" And that after setting out the bond and its condition, as also the bond given to Mrs *Evans,* which is referred to in the bond on which the declaration is drawn, together with the suit and judgment had upon it, and the payment of the same out of the moneys arising from the sale of *Henry Share's* property ; and again, the suit and judgment had, in consequence thereof, against *James Mehaffy* at the suit of *Henry Share,* for the use of *Henry Haines ;* the plaintiffs say, " by reason of which premises the said *James* hath sustained large damages, to wit, to the amount, &c.," and superadd, " by reason of which breaches the said writing obligatory became forfeited, and action hath accrued *to them, the said James Mehaffy and James Duffy,* who sue for the use of the said *James Mehaffy, so far as relates to his interest on the said bond of indemnity,* to have and demand from the said *Joseph Lytle,* who survived the said *John Pedan,* the said sum of 7233 dollars and 41 cents ; yet the said *Joseph Lytle,* although often requested, &c., hath not paid, &c., to the *damage of them, said James Mehaffy, and James Duffy,* 7233 dollars and 41 cents, and therefore they bring their suit, &c." Now, although there may be some useless and unnecessary verbiage introduced into this declaration, yet, I apprehend, that it

contains every thing that is necessary, when proved, to entitle the plaintiffs to a recovery.    *Utile per inutile non vitiatur,* is the maxim of law in respect to this.    The bond upon which this suit is founded, is joint in its terms to *James Mehaffy* and *James Duffy.*    Although the suit is stated to be for the use of *James Mehaffy,* yet it is legally, and technically, and properly too, a joint action by them both against *Joseph Lytle.*    To enable the plaintiffs to maintain their action on this bond, it was not necessary that they should have been compelled to pay more on account of the delinquency of *John Pedan,* out of their *joint* funds.; nor that they, or either of them, should have paid it on a proceeding or judgment had against them *jointly.*    The terms of the condition of the bond are such as to show, beyond a doubt, that it was given for the purpose of protecting both or either of the joint obligees.    The words are, "keep harmless, and indemnify the said *James Mehaffy* and *James Duffy,* their heirs, executors and administrators, and *his* and *their* goods and chattels, lands and tenements, &c."    Hence a payment of money made by either *James Mehaffy* or *James Duffy,* by reason of *John Pedan's* having failed to pay his proportion of the debt due to Mrs *Evans,* would create a forfeiture of the bond in suit, and enable the obligees to maintain a joint action ; and in no other form, perhaps, could it be maintained, as the bond is joint ; but still it would be necessary to set forth and state the breach according to the truth of the facts, as appears to have been done in this case, judging from the evidence that was given on the trial of the cause.    The facts set forth in this declaration show most clearly a forfeiture of the bond, and a right upon the part of the plaintiffs to maintain this action.    If the words declaring it to be for the use of *James Mehaffy* had been omitted, the breach assigned shows unquestionably that he is the party really injured by it, and the recovery would, by operation of law, necessarily result to his use ; and surely, it would be most strange indeed if it could be made error to declare a suit for the same use which the law, from the facts set forth, would necessarily imply it.

· The conclusion of the plaintiffs set forth in their declaration, immediately after the assignment of the breach of the condition of the bond, in these words, "by means of which premises the said *James* hath sustained large damages, to wit 7233 dollars and 41 cents," has been excepted to, and pressed, seemingly with great earnestness ; but there is nothing in it incompatible with the forfeiture of the bond as previously set forth, nor yet with the right of the plaintiffs to maintain this action.    Neither do I think, that there is any weight in the objection made to the declaration on account of the following words, "*so far as relates to his interest* (meaning *Mehaffy*), *in the said bond of indemnity,* &c.," which are introduced in several places, with a view, as is alleged, of reserving the right of *James Duffy* to maintain another suit upon this same bond for his use. I do not believe that a reservation, made in the most unambiguous

[Mehaffy v. Lytle.]

terms that could be imagined to that effect, would avail any thing more than if every thing of the kind were omitted; so that it can work no injury to the defendant, and is therefore not to be regarded as having any effect whatever.

We think that the judgment of the circuit court is right.

Judgment affirmed.