# First National Bank of Spring Mills, Appellant, *v.* Walker.

*Banks and banking—Collection—Sight draft—Right of collecting bank to sue—Principal and agent—Guaranty—Contract of indemnity.*

1. A collecting bank can sue on paper which has been endorsed to it for collection.

2. Where the owners of bonds draw a sight draft on a bank as a proposed purchaser of the bonds and deposit the draft and the bonds with a trust company for collection, and the cashier of the

bank accepts the bonds and negligently delivers them to a third person who has no right to them, the trust company, as a collecting agent, may sue the bank in its own name for the loss.

3. In such case, if the cashier executes a judgment note to his own bank, with a declaration as to his own negligence, and agrees that the bank shall enter a judgment on the note for its own use to protect it against any loss brought by the owners of the bonds (naming them) to recover all or any part of the amount of the loss, the cashier cannot subsequently claim that he was relieved of liability because the judgment, recovered by the trust company against the bank and paid by it, had not been recovered in a suit brought by the actual owners of the bonds.

4. The language of the indemnity, interpreted in the light of the surrounding facts, did not mean that there must be an action in the name of the owners but rather was intended to indemnify against any loss occasioned by the cashier's failure to exercise due diligence in the performance of his duties.

5. A contract of indemnity should be construed so as to cover all losses, damages or liabilities to which it reasonably appears to have been the intention of the parties it should apply.

*Contract—Construction—One who prepares the contract.*

6. The rule that one who prepares a contract shall have it construed most strongly against him, was held not applicable under the facts of this case.

Argued January 31, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeal, No. 10, Jan. T., 1927, by plaintiff, from order of C. P. Center Co., Sept. T., 1922, No. 50, directing judgment to be satisfied of record, in case of First National Bank of Spring Mills v. S. G. Walker. Reversed.

Petition to have judgment satisfied of record. Before DALE, P. J.

The opinion of the Supreme Court states the facts.

Order to satisfy entered. Plaintiff appealed.

*Error assigned* was, inter alia, order, quoting record.

*John Blanchard,* with him *S. D. Gettig, John J. Bower* and *Edmund Blanchard,* for appellant.—The recovery in Fidelity Title & Trust Co. v. First National Bank of

Spring Mills, 277 Pa. 401, was sustained in part because, as shown in that case, while the bonds in question belonged to Moore, Leonard & Lynch, the right of recovery by the Fidelity Title & Trust Company, as Moore, Leonard & Lynch's forwarding bank, was sustained because of the special interest of the Fidelity Title & Trust Company in the cause of action, and because of its duty to account to Moore, Leonard & Lynch, the owners, for its handling of the lost bonds (277 Pa. 407). The judgment in that case having been paid by the First National Bank of Spring Mills, it follows as matter of law, and is also clearly agreed on all sides, that there is now no further liability against the First National Bank of Spring Mills by Moore, Leonard & Lynch, or any one else, growing out of this loss. Therefore, the recovery adjudicated and sustained in Fidelity Title & Trust Co. v. First National Bank of Spring Mills fixed the loss and subjected the First National Bank of Spring Mills to the very loss for which the indemnification was given by Walker to the bank under his indemnifying contract.

*N. B. Spangler,* with him *Ivan Walker,* for appellee.— Nothing is plainer than that the liability of appellee is restricted to the bringing of a suit by Moore, Leonard & Lynch: Heist v. Tobias, 182 Pa. 442; Ayer's App., 28 Pa. 179.

OPINION BY MR. JUSTICE KEPHART, March 21, 1927:

Moore, Leonard & Lynch are bankers and brokers and owned $5,000 of government bonds. They drew a sight draft on the First National Bank of Spring Mills, who, they had been informed, desired to purchase, and deposited the same for collection with the Fidelity Title & Trust Company, the securities being attached. The paper was forwarded by the agent to the first named institution, "for collection and return." The teller received the bonds and turned them over to S. G. Walker, cashier, and he carelessly permitted a third party, who pretended

that he was a representative of the owner, to take possession of them, and as a result a total loss occurred. The bank believed the sum due would be made good, and made no effort to apprehend the thief, nor did it notify its correspondent, or the true owner, of the occurrence until more than a week had elapsed.

. The national bank examiner found the condition of the Spring Mills bank unsatisfactory, and his attention was directed to the loss of the securities referred to. The cashier then made a written declaration that he had negligently delivered to one McFeaters without payment the bonds consigned by the brokerage firm, and agreed "of his own free will" to execute a judgment to be entered of record in the sum of $5,500 "for the use of the above-named bank to protect it against any loss, brought by the above Moore, Leonard & Lynch to recover any or all of the above amount." On the same day he signed, under seal, a note, apparently filled in by the examiner, and not by any of the officers of the bank, confessing judgment for the amount stipulated.

Later, the Fidelity Title & Trust Company, the forwarding and collecting agent of the consignors of the bonds, brought suit against the bank and recovered judgment, which on appeal was affirmed: Fidelity T. & T. Co. v. First N. B. of Spring Mills, 277 Pa. 401. The facts surrounding the transaction are there related in more detail, as will be found by reference to the reported decision. In the affidavit of defense then filed it was averred that Moore, Leonard & Lynch were the real owners, and an effort made to prevent judgment on the theory that the thief was authorized to act on their behalf. It is to be observed it was then claimed that the bonds belonged to the brokerage firm, and the right of the forwarding agent to bring a suit on their behalf was denied, a contention negatived in the decision rendered. The real owners of the securities took part in that trial, its manager being one of the witnesses, and the identity of the claim of the trust company and the firm repre-

sented by it made evident. Walker was a witness for the defendant, though not a party, and by his evidence attempted to show that the actual party in interest was Moore, Leonard & Lynch, and for this reason the trust company could not maintain its action. He then had notice of the claim which was in controversy, and cannot now be permitted to challenge the identity of the transaction in this proceeding, based on the judgment which he gave to protect the bank from loss: Mehaffy v. Lytle, 1 Watts 314. This court said in its opinion (277 Pa. at page 407) : "Nor is there any real doubt but that plaintiff had such a special interest as entitles it to maintain the action. It had a right to the possession of the bonds as against everybody but Moore, Leonard & Lynch, and had a duty of accounting to the latter for its handling of them."

"A collecting bank can sue on paper which has been endorsed to it for collection": 7 C. J. 612. "The general rule is that when a contract is entered into with an agent in his own name [here the bonds had been turned over to the trust company to deliver and collect], the [obligation] being made directly to him, he may maintain an action on such contract in his own name without joining the person beneficially interested ; ...... an action for goods converted while in the possession [or under the control] of an agent may be prosecuted in the name of the agent alone": 2 C. J. 901. This position was upheld in the action brought by the trust company against the bank, already referred to, and cases there cited support the view taken. The trust company plaintiff was merely a collecting agent of the proceeds of the securities in its possession. "When the paper is accepted for collection under express directions to collect and remit, the money in the hands of the bank is then a trust fund [for the real owner]": 7 C. J. 617. The parties to the present proceeding have agreed, and the court below has declared, that the recovery by the agent was on behalf of the one it represented, and no other action can be main-

tained by the owners of the bonds. This is merely a declaration of the legal rule which applies under circumstances such as here appear: 2 C. J. 635. The affirmance of the judgment at the suit of the trust company fixed the amount recoverable, and subjected the Spring Mills bank to liability for the loss, for which the indemnification was given by Walker. The liability to make good arose when a recovery was had against the indemnitees: Carman v. Noble, 9 Pa. 366.

After the payment to the Fidelity Trust Company, following the affirmance of the action brought by it, a petition was presented by the present defendant, the cashier, praying that the judgment given by him to indemnify the bank be satisfied, claiming it covered only a loss arising from a suit brought directly by Moore, Leonard & Lynch, and that the terms of his contract to make whole for any loss sustained were not sufficiently broad to impose liability when the action was instituted by its collecting agent, the trust company, though the same loss was involved, and the judgment recovered satisfied all liability to its principal. A stipulation as to facts involved was filed of record, setting forth the matters to which we have already called attention, with further details unnecessary to a proper determination of the controversy. It was agreed that the court should interpret the wording of the agreement and fix the legal liability of the defendant. If the decision sustained the contention of the plaintiff, then the rule was to be discharged; otherwise, the judgment should be marked satisfied. The trial judge was of opinion that the indemnitor was not liable unless an action was brought against the bank, in which Moore, Leonard & Lynch were plaintiffs, and a recovery had, and since no suit could hereafter be maintained by that firm, its agents having received full satisfaction, though on its behalf, Walker had no further responsibility. It therefore directed that the judgment be satisfied. From this order the plaintiff has appealed.

There can be no question that the money paid by the Spring Mills bank to the Fidelity Title & Trust Company as a result of the judgment recovered and affirmed, represented the value of the lost bonds which Walker, the cashier, negligently, according to his own written declaration, permitted a third party to take without payment. The identity of the transaction is not in question, nor the fact that the payment made prevents any further action by the real owners of the securities, who had placed them in the hands of the trust company with a sight draft for collection. "The general rules which govern the construction and interpretation of other contracts apply in construing a contract of indemnity, and in determining the rights and liabilities of the parties thereunder. In accordance with such rules, the important question for determination is the intention of the parties, and the contract should be so construed, if it can be done consistently with legal principles, as to ascertain and give effect to such intention;......and consideration must be given not only to the language of the contract but also to the situation of the parties and the circumstances surrounding them at the time the contract was made": 31 C. J. 426; Lancaster Nat. Bank's App., 122 Pa. 31.

It is urged that a strict construction of the words employed indicates that a suit must have been "brought" by the owners and consignors of the bonds, and cases are cited to show that a contract of indemnity is limited to the particular matter expressly set forth. This contention as a general rule will not be questioned. A consideration, however, of the language here used does not convince us that the agreement, interpreted in light of the surrounding facts, meant that there must be an action in the name of the brokers before liability attached, but rather it was intended to indemnify against any loss occasioned by the indemnitor's failure to exercise due diligence in the performance of his duties.

"A contract of indemnity should be construed so as to cover all losses, damages, or liabilities to which it reasonably appears to have been the intention of the parties it should apply": 31 C. J. 429. It would be a strained construction, and clearly not a carrying out of the purpose of the parties, to hold that the words "to protect [the bank] against any loss, brought by the above Moore, Leonard & Lynch to recover," excluded a claim when the action was instituted by one legally authorized to bring suit on its behalf. As was said in Assets Realization Co. v. Roth, 226 N. Y. 370, 123 N. E. 743, "The defendant and his associates had a business interest to protect [in the present case the cashier was liable for his negligence], and in order to protect it they assumed a primary liability as insurers against loss. The liability is not to be whittled down by the implication of conditions not fairly and reasonably involved in the gist and scheme of the transaction."

In the instant case, it must be conceded that Walker agreed to save the bank harmless from any loss due to his admittedly negligent surrender of the bonds to a third party without receiving payment, and for which he was legally responsible (7 C. J. 567), as he would be for his tortious acts: Boker's Est., 7 Phila. 479. The actual suit against the bank was by the collecting agent, but it was merely an action on behalf of the real owners named in the indemnity contract. The trust company could sue on behalf of its principal, as we have noticed, and its act will be treated as if done by the latter, for he who acts through another acts for himself. The action instituted by it must be treated as if brought by Moore, Leonard & Lynch. There is no doubt that the loss contemplated by the indemnitor occurred, and that no further liability on account thereof can be asserted. The judgment obtained was paid, and having been obtained without fraud or collusion, is conclusive upon Walker as to the extent of his liability: 31 C. J. 460. He agreed to protect the bank from damages caused by his care-

lessness in giving up the bonds without consideration, and whether the recovery be had at the suit of the party mentioned in the agreement, or in the name of its agent, he, as indemnitor, is liable.

Nor can we see that the authorities cited by appellee to the effect that the one who prepares the contract shall have it construed most strongly against him, when doubt as to the meaning arises, have any application. The officers of the bank, indemnitee, did not write the agreement now the subject of controversy, but a bank examiner, who was making an effort to retrieve assets, and prevent the closing of the institution, whose capital was impaired. Even if the principle suggested could be invoked, in our view there is no such ambiguity as to relieve the defendant from responsibility. The intention of Walker to protect the bank from the damage suffered by the improper turning over of the bonds is clear. The latter was compelled to pay the principal through the agent, and it has the right to reimbursement.

The order of the court below is reversed at costs of appellee, and the rule to show cause why the judgment entered in the Court of Common Pleas of Center County, to No. 50, September Term, 1922, should not be marked satisfied is hereby discharged.