676

# In re Darby Bank and Trust Company

*Samuel A. Montgomery*, for accountant; *Francis Brearly*, for exceptant.

MACDADE, J., July 5, 1933.—Supplementing what may have been proven but not yet formally found as facts duly developed in the course of the testimony adduced at the hearing of the exceptions filed in behalf of Darby Building and Loan Association to the partial account of William D. Gordon, Secretary of Banking, we find the following as facts, as per stipulation filed on June 6, 1933, wherein and whereby it is agreed by and between the accountant and the exceptant that:

1. Darby Building and Loan Association is a corporation, incorporated under the laws of Pennsylvania to conduct the business of a building and loan association.

2. The said association, on or about December 1, 1930, approved a loan to one William Albert Bernhart of $1,200, subject to a prior mortgage of $4,000, on premises 500 South Fourth Street, Colwyn, Pa.

3. William Albert Bernhart then applied to Darby Bank and Trust Company for title insurance for said mortgage in title application No. 900.

4. On or about December 10, 1930, the exceptant transferred from its deposit account in Darby Bank and Trust Company to the title department of the said bank the sum of $1,200, the said transfer being made by a check bearing date of December 10, 1930, and being drawn on Darby Bank and Trust Company, which check was duly executed by Darby Building and Loan Association, by its proper officers. Darby Bank and Trust Company had agreed to insure the title to a mortgage to Darby Building and Loan Association on premises 500 South Fourth Street, Colwyn, said mortgage to be in the amount of $1,200, and to be made by W. Albert Bernhart.

5. The title department deposited with Darby Bank and Trust Company the said check of $1,200 in an account known as "Settlement Account—Darby Bank and Trust Company", which at the time of the closing of the bank had a balance of $1,869.54.

6. The check so deposited was to be used only for a second mortgage, subject to a first mortgage of $4,000.

7. Subsequent to December 10, 1930, and prior to January 8, 1931, the said W. Albert Bernhart executed a mortgage in favor of Darby Building and Loan

Association in the amount of $1,200, which was thereafter recorded, and the sum of $5 was paid by Darby Bank and Trust Company for the recording of the same.

8. On January 8, 1931, Darby Bank and Trust Company ceased to conduct its business and was taken into possession by the Secretary of Banking for the Commonwealth of Pennsylvania.

9. On January 8, 1931, the said transaction was uncompleted, due solely to the impossibility of releasing certain liens against the premises, 500 South Fourth Street, Colwyn, Pa.

10. Darby Bank and Trust Company has expended the sum of $8 on account of this settlement.

By reference to the said partial account, the above stipulation (repetition being necessary for a better understanding of the issues) and the evidence, we may glean in a general way the following to be the situation which now presents itself to the court's consideration for determination; as follows:

Darby Building and Loan Association, the exceptant, is a corporation incorporated under the laws of this Commonwealth to conduct the business of a building and loan association. On or about December 1, 1930, it approved a loan of $1,200 to one William Albert Bernhart, said loan being subject to a prior mortgage of $4,000, on premises 500 South Fourth Street, Colwyn, Pennsylvania. Bernhart then applied to Darby Bank and Trust Company for title insurance for said mortgage, under title application No. 900.

On or about December 10, 1930, the association transferred from its deposit account in Darby Bank and Trust Company to the title department of the said bank the sum of $1,200, by check dated December 10, 1930. The bank had agreed to insure for the association the title to the Bernhart mortgage of $1,200.

The bank deposited the association's check with itself in an account entitled "Settlement Account—Darby Bank and Trust Company." This account had a balance of $1,869.54 at the time of closing of the bank.

Subsequent to December 10, 1930, and prior to January 8, 1931, Bernhart executed the mortgage, which was recorded, and the sum of $5 was paid by the bank for the recording of the same. The bank has also expended the sum of $8 to procure a necessary search in order to make settlement.

On January 8, 1931, the bank ceased to conduct its business and was taken into possession by the Secretary of Banking for the Commonwealth of Pennsylvania.

On January 8, 1931, the said transaction was uncompleted, due solely to the impossibility of releasing certain liens against the premises to be insured.

Upon the receipt of the aforementioned check the bank issued its receipt, which receipt is as follows:

"Darby Bank and Trust Company,
    Darby, Pa.
        December 10, 1930
Application No. 900
Received of Darby Building and Loan Association Twelve Hundred........
Dollars to be applied in settlement for a second mortgage covering premises of William Albert Bernhart, No. 500 South 4th Street, Colwyn, subject to a first mortgage of Four Thousand Dollars.

                                    (SGD) Charles F. Eggleston,
            T. O.
            For Company.
If settlement is not made, money will be returned, without interest."

Subsequent to the closing of the bank, William D. Gordon, Secretary of Banking for the Commonwealth of Pennsylvania, in possession of Darby Bank and Trust Company, filed his first and partial account dated May 2, 1932, under the above term and number. In this account the item in question is set up on page 348 as follows:

"List of Claims of the First Class

| Name and Address | Amount | Off-set | Net Balance | First Advance Payment —20% |
|---|---|---|---|---|
| Settlement Account | | | | |
| Darby Bank & Trust Co. | 1,869.54 | | | |
| Outstanding cks. ....... | 103.25 | 4/30/31 100.25 | | |
| | | 3.00 | | |
| Title No. 882. Wm. R. | | | | |
| Title Bricker .......... | 308.50 | 5/2/32 308.50 | | |
| Title 892 R. J. ......... | | | | |
| Title 892 R. J. ......... | | | | |
| Title Frescoln ......... | 40.00 | | 40.00 | 8.00 |
| Title 898 Frescoln ..... | 162.43 | | 162.43 | 32.49 |
| Title 900 Darby | | | | |
| · B. & L. Ass'n | | | | |
| W. A. Bernhart ....... | 1,200.00 | | 1,200.00 | 240.00 |
| Unknown creditors | | | | |
| listed as deposit | | | | |
| liability 1/8/31— | | | | |
| transferred to Un- | | | | |
| known creditors ..... | 53.36 | | | |
| Settlements Pending ... | | 20.00 | | |
| Transferred to | | | | |
| Unknown Creditors" | | | | |

On page 683 of the aforesaid account, the claim of the exceptant is listed under

"SUNDRY CLAIMS FOR PRIORITY—OBJECTED TO

| Claimant | Description | Amount |
|---|---|---|
| Darby Building & Loan Assn., Darby, Penna. | Claim arises from a deposit of $1,200 made on Dec. 10, 1930, by Darby Building and Loan Association, to be used in settlement of a mortgage to be made by W. Albert Bernhart, under the condition that if the settlement did not go t h r o u g h the money would be returned to the Association. This fund was commingled with other funds of the bank and was considered as a deposit account by Darby Bank and Trust Company, and carried in a checking account. Priority objected to | $1,200 |

Included as a claim of a depositor, page 348."

The exceptions filed were as follows:

"First: In that the account refuses priority to said claim. Second: Said sum of $1,200 was paid to the title department under title No. 900 with the specific

agreement that, if settlement was not made, the money would be returned and thus become a trust fund and should have preference."

## Question Involved

Whether a deposit of $1,200 made by the exceptant with Darby Bank and Trust Company is entitled to priority in the distribution of assets of said Darby Bank and Trust Company, said deposit being made by the building and loan association by its check drawn on Darby Bank and Trust Company and deposited with the same institution for the purpose of making a settlement for a second mortgage and having title insurance issued by said Darby Bank and Trust Company.

## Discussion

Unfortunately for exceptant, the Bernhart settlement was not completed because certain liens which could not be released appeared against the premises when the bank was closed for liquidation by the banking department. The exceptant paid over its money on December 10, 1930, for the purpose of settlement by the bank, which was to issue a certificate of title insurance, or at least to insure the said second mortgage, and the bank closed its doors on January 8, 1931, before the proposed settlement for which the money was deposited had been completed. The title department deposited the sum with the bank in an account marked "Settlement Account"; there was more than sufficient in this account, when the bank closed, to cover the sum deposited. There was over $5,000 cash in the vaults of the bank when it closed as per the account filed.

Under the law and facts shown there are three classifications under which this item could be set up in the account of the Secretary of Banking: (1) As a preference over all other depositors or general creditors; (2) depositor's status (status given the claimant in questions in the account, to which the exception has been filed) ; (3) general creditor.

### 1.

Did a trust relationship ever exist between the bank and the building and loan association?

In our judgment, based upon the facts proven in the instant case, the relationship which existed between the association and the bank was one of principal and agent.

In support of this statement of our judgment, we need only to cite Webb v. Newhall, Assignee, 274 Pa. 135; that case was one of principal and agent, and the Supreme Court there said, in discussing the relationship of the parties (p. 138) : "True, the mere giving of a check does not entitle the payee thereof to a preference over other creditors upon the fund against which it is drawn; but here the relation between plaintiff and the brokers was that of principal and agent, not of debtor and creditor, and so long as his money remained in their bank account he could reclaim it. Had they used it for their own purposes and placed other funds in the account, an entirely different case would be presented; as there would had the agent been a banking institution and mingled the funds with those of others in the general course of business: Com. ex rel. v. Tradesmen's T. Co. (No. 2), 250 Pa. 378; Miller's Appeal, 218 Pa. 50; Bank's Assigned Estate, 166 Pa. 622. It is, however, not the fact of a trust relation that entitles plaintiff to priority, but his ability to trace and identify the fund as his property: Lifter v. The Earle Co., 72 Pa. Superior Ct. 173; 34 Cyc. 348. A trust creditor, merely as such, has no preference over others: Thompson's Appeal, 22 Pa. 16."

The accountant contends that the priority in Webb v. Newhall, Assignee, supra, was placed not on the trust relationship alone but on the ability of the plaintiff to trace and identify the funds as his property, and distinguishes this case from a banking institution transaction. While in the Newhall case the court felt that no title passed to the fund in question and therefore the broker could not pass title to the fund by any assignment to his creditors, yet we find the appellate court saying: "The brokers received the money in question as agents for plaintiff, without authority to use it as their own, and he did not lose his title thereto by its deposit in their bank account, so long as it could be traced."

In the case at bar, the funds in question originally came from the association's deposit account with Darby Bank and Trust Company, and it received a credit in another form, as shown by the receipt already in evidence. There was no actual cash handed over the counter, nor were the assets of the bank augmented. The net result of the whole transaction was a bookkeeping entry whereby the deposit account of the association was reduced, and an increase made in the settlement account in favor of the association.

The Secretary of Banking, in making up the account of Darby Bank and Trust Company, evidently set up this item on the ruling enunciated in Webb v. Newhall, Assignee, supra, for in that case the court specifically stated that recovery was placed not on a trust but upon the ability of the plaintiff to trace and identify the funds as his own. The brief of accountant informs us that while the fund in question cannot be sufficiently traced under the law to secure a preferred status, a deposit account was set up to cover, inter alia, this account; hence the allowance of a depositor's status rather than that of a general creditor.

Under the law, the exceptant can have any one of the three aforementioned classifications in the distribution of the assets of the fund.

In order for the exceptant to be placed in the class of those entitled to priority, it must show that the bank stood not only in the relationship of principal and agent but in the relationship of trustee and cestui que trust. This trust relationship must be either express, implied, or created by the wrong of the banking institution, a relationship of trustee ex maleficio. In the case at bar, the exceptant has attempted to show an express trust, coupled with a relationship of principal and agent existing between the parties. The exceptant also contends that a relationship of trustee ex maleficio existed, and that a wrong has been done it in the handling of this transaction by the bank. As in Cameron v. Carnegie Trust Co., 292 Pa. 114, 120, 121, the account here "wrongfully included [the item] in the trust company's general assets, which were at all times sufficiently large to make good the amount due, and the effect of refusing relief would be to give to other distributees a larger sum than they would have received but for the fraud practised on appellant. In view of this, to rule in appellee's favor would be to make the fraud successful, whereas to refuse so to do could not possibly result in legal harm to anyone." If the exceptant shows the bank to be a trustee, created by the agreement or implied from the facts, then the equitable title to the fund created never existed in the bank, and it is doubtful if the building and loan association has an additional duty to trace the funds into some specific account.

"True, the mere giving of a check does not entitle the payee thereof to a preference over other creditors upon the fund against which it is drawn; but here the relation between plaintiff and the brokers was that of principal and

agent, not of debtor and creditor, and so long as his money remained in their bank account he could reclaim it": Webb v. Newhall, Assignee, supra. In First Nat. Bank of Spring Mills v. Walker, 289 Pa. 252, the relation of principal and agent was held to exist in the case of a customer and a trust company where the owner of bonds drew a sight draft on purchaser, with bonds attached, and delivered them to a trust company for collection. It was said: "The trust company plaintiff was merely a collecting agent of the proceeds of the securities in its possession. 'When the paper is accepted for collection under express directions to collect and remit, the money in the hands of the bank is then a trust fund [for the real owner]': 7 C. J. 617."

In Vosburgh's Estate, 279 Pa. 329, it was held that "where renewal notes are sent by the maker to the payee to be discounted and the proceeds used to lift the old notes, and, between the day of discount and time for payment, the payee dies, these funds identified are fixed with a trust in the maker's favor." (Syllabus.)

The court said, at page 332: "A trust is a relation between two persons, by virtue of which one of them as trustee holds property for the benefit of the other. The term 'trust' is a very broad and comprehensive one. . . . every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied as well as when not so applied. 'The cases of hirer and letter to hire, borrower and lender, pawner and pawnee, principal and agent, are all cases of express trust': Warner v. McMullin, 131 Pa. 370, 382".

The same relation of principal and agent would apply in the instant case. Formerly settlements for mortgages and conveyances were uniformly made by lawyers or conveyancers, who acted as agents for both parties in the settlement.

There is now no distinction between a banking institution and an individual in such a relation. See Cameron v. Carnegie Trust Co., 292 Pa. 114.

In that case the Ottumwa Bank sent Carnegie Trust Company a note for collection. The trust company collected the note in cash, which it mingled with its other funds, and sent Ottumwa Bank a draft. Meanwhile the trust company was declared insolvent and taken over by secretary of banking, and the draft not paid. The court held the Ottumwa Bank had a preferred claim, and said (p. 118):

"The relation between the bank and the trust company was not the ordinary one of debtor and creditor, but that of principal and agent (Webb v. Newhall, 274 Pa. 135, 138; First National Bank of Spring Mills v. Walker, 289 Pa. 252, 256), and the trust is an express one: Vosburgh's Est., 279 Pa. 329, 332."

"In Webb v. Newhall, 274 Pa. 135, under facts much like those appearing here, the preference was allowed, and that decision is controlling. The statement (page 138) that 'an entirely different question would be presented . . . had the agent been a banking institution,' is shown in Conneautville Bank's Assigned Est., 280 Pa. 545, 548, to apply only where 'the usual relation between bank and depositor should exist, or the relation between them should be the [ordinary one] of trustee and cestui que trust,' which is not the situation in the present case": Cameron v. Carnegie Trust Co., supra, 121.

See also Conneautville Bank's Assigned Est., 280 Pa. 545, where the cashier of and partner in an unincorporated bank took claimant's bonds from a safe deposit box, sold them, and placed the proceeds to the credit of the bank in a trust company, and it was argued that claimants were only general creditors under Commonwealth ex rel. v. Tradesmen's Trust Company (No. 2), 250 Pa.

378, and that this was the case of a bank which held the funds of all its patrons as a trust and there was a mingling or mixture of trust funds.

The court said (p. 548): "The difficulty with the position assumed by appellant's counsel is that the property of appellees was not held in trust by the bank in the sense in which he uses the term. The bank's relation to the securities was merely that of bailee for custody".

The opinion then quotes Webb v. Newhall, supra, with approval and distinguishes the dicta in reference to the agent being a banking institution as referring only to the ordinary relation of depositor and bank.

If exceptant is obliged to trace the funds, arguendo, this principal can claim title to the fund so long as it can be traced. It is the identity of the fund and not the pieces of coin that control: Webb v. Newhall, supra.

The brokers received the money in question as agents for plaintiff, without authority to use it as their own, and did not destroy his title thereto by its deposit in their bank account, so long as it could be traced. In such case it is the *identity of the fund,* not of the pieces of coin or bank notes that controls: The Farmers' and Mechanics' National Bank v. King, 57 Pa. 202. Where the agent has mingled his own property with that of the principal, the latter may reclaim from the admixture an amount equal to his own, although it may not be the same identical property.

Mr. Justice Simpson, in Cameron v. Carnegie Trust Co., supra, p. 120, stated, quoting 3 Pomeroy's Equity Jurisprudence (4th ed.), 2384, sec. 1048(e):

" 'If the beneficiary can show that the trustee's estate, as it came into the hands of his assignee, trustee in bankruptcy, receiver, executor or administrator, was *actually increased* by the whole or a definite portion of the misappropriated trust fund, justice demands that he, and not the other creditors, should have the benefit of this increase. The creditors have no right to make a profit by their debtor's breach of trust.' And again (page 2388): 'It is now the well settled rule, that where withdrawals from the mixed fund, with or without subsequent replenishing from the trustee's individual money, have not at any time reduced the balance to a sum less than the trust fund deposited, the cestui que trust, as against the trustee's creditors, is entitled to repayment in full; his money is sufficiently identified as having always been contained within the blended fund.'

"In the present case, admittedly, the money belonging to appellant was wrongfully included in the trust company's general assets, which were at all times sufficiently large to make good the amount due, and the effect of refusing relief would be to give to other distributees a larger sum than they would have received but for the fraud practiced on appellant. In view of this, to rule in appellee's favor would be to make the fraud successful, whereas to refuse so to do could not possibly result in legal harm to anyone. Hence, we again state, what is and always should be fundamental, that no one, however innocent he may be, will be permitted to benefit by the wrongdoing of another, if the result will be to make effective the injury to the person wronged, and it is equitably possible to prevent such a result: Stirk's Est., 232 Pa. 98, 110; O'Connor v. O'Connor, 291 Pa. 175."

Mr. Justice Simpson then proceeds to distinguish the various Pennsylvania cases and further says:

"Com. ex rel. v. Tradesmen's Trust Co. (No. 2), 250 Pa. 378, was a case where the trust company was entitled to collect and hold the money which was sought to be the basis for a preferred claim. In Webb v. Newhall, 274 Pa. 135, under

facts much like those appearing here, the preference was allowed, and that decision is controlling."

In Springfield Real Estate Co. v. Suburban Title & Trust Co., 22 Del. Co., 135, the facts are essentially different from the instant case. There the money was on deposit in the bank, subject to be checked out only by the bank to pay for bills in a building operation, while here there was a written agreement to return the money to exceptant if settlement failed to be consummated. Here then the bank was no more than a stakeholder, holding the fund as if it were in escrow.

However, we fail to agree with the opinion expressed by the accountant that this court is bound by the decision in Com. ex rel. v. Tradesmen's Trust Co. (No. 2), supra. It would seem rather that the Tradesmen's Trust Company case had been practically distinguished out of all binding authority to the facts at least in the instant case.

Webb v. Newhall, Assignee, 274 Pa. 135, Conneautville Bank's Assigned Estate, 280 Pa. 545, First National Bank of Spring Mills v. Walker, 289 Pa. 252, and Cameron v. Carnegie Trust Co., 292 Pa. 114, have all taken their turn in distinguishing, one after another, the positions assumed in the Tradesmen's case, until there is very little left for future distinguishment.

Fortunately, we can point to cases similar to the instant one, which have already been decided by two separate Common Pleas Courts of Philadelphia County.

In the Bankers Trust Case, C. P. No. 4, December Term, 1930, No. 5553, Judge Finletter granted several petitions directing the payment of funds on deposit in incompleted settlements in the title department.

In Coscia's petition, it was alleged a check for $4,428 had been drawn to the order of a building association on December 17, 1930, in settlement of a mortgage, and subsequently the bank closed and the check was protested. A decree was entered June 24, 1931, directing the Secretary of Banking to pay this sum to the building association in satisfaction of the mortgage in question.

In Gelgood's petition it was alleged that a settlement had been made and the sum of $240, left in the settlement account which was to be paid to petitioner, as owner, as soon as settlement was completed by the satisfaction of certain mortgages. Meantime the bank closed. A decree entered by Judge Finletter directed the payment of this sum to petitioner. The case is not reported.

In the more recent case of In re Susquehanna Title and Trust Company, 16 D. & C. 530, the facts were that at a settlement in the title department, the seller had left $1,000 on deposit with the company to guarantee the satisfaction of a judgment which had turned up. Before this satisfaction was obtained, the bank closed, but subsequently the judgment was satisfied. The seller made claim for preference and the court granted it under the ruling in the Carnegie Trust case, supra. Ferguson, P. J., in his opinion said: "There was no wrongdoing here on the part of the officers of the company. At the time the money was retained out of the settlement the company was solvent. Both parties acted in good faith; the money went into the general funds of the company, as many other items would naturally go, especially in the case of a trust company doing a title insurance business. The general funds were thereby increased. At any time, upon production of evidence that the judgment had been satisfied, Dowling could have obtained the money. The position of the company in law was doubtless that of an agent. Dowling's claim was not for service rendered the company or for goods or equipment sold the company, or for loss or damage growing out of a contract of suretyship or of title insurance. In other words,

it was not a debt of the company. His money was temporarily held to protect the purchaser of his house, to be paid over as soon as that protection was secured.

"In our opinion, the matter is ruled by Cameron v. Carnegie Trust Co., 292 Pa. 114. The plain meaning of that decision is that if money of a third party goes into the general funds of a banking institution, where it is mixed with the funds of other people, and his money actually increases the fund, justice demands that it be returned to him. The other creditors should not have the benefit of the increase. While it is apparent in that decision that the company was a trustee ex maleficio, we see no reason why, when money goes into the general fund and increases it, under circumstances characterized by good faith and void of occasion for criticism, an equal protection should not be granted the party to whom the money rightfully belongs. No legal harm can result to depositors of this institution by withdrawing from funds now available for distribution the amount this claimant in equity is entitled to receive."

Justice Simpson, in the Carnegie Trust case, clearly sets forth the fundamental rights of the parties, as above quoted.

Surely it would be most inequitable to take the money of the building association, made up as it is largely by the savings of the poor, and turn it over to the general depositors, who can show no title whatever to the same.

As Judge Ferguson well said: "No legal harm can result to depositors of this institution by withdrawing from funds now available for distribution the amount this claimant in equity is entitled to receive."

The instant case is stronger, in that there is a written receipt agreeing to return the money upon failure of settlement.

Lastly, there is the recent case of In re Bloomfield Trust Company et al., 19 D. & C. 340, where a trust company set aside $3,000 out of the deposit account of the Pennsylvania Marble and Mosaic Tile Corp. and marked the ledger sheet: "This amount to be held in this account for loans borrowed here." Subsequently the marble company borrowed $4,000 on its note, which note was subsequently sold to the Garfield Bank. The trust company afterwards failed.

In that case it was held that the account was collateral for the note, and that upon transfer of the note, the collateral was ipso facto assigned with it: Beaver Trust Co. v. Morgan et al., 259 Pa. 567; and that failure to transfer this account to the Garfield Bank created a trust in the trust company for the bank. But the court said: "The exceptant must trace the proceeds received from the conversion and identify them as contained in some specific fund". Up to the time of "the closing of the bank, the Bloomfield Trust Company had on deposit in local and New York banks a sum more than sufficient to cover the amount here involved. It had in its banking house cash in the sum of $1,000. . . . In view of the practical administrative difficulties, the intricacies of bookkeeping and accounting systems, and the impossibility of generally identifying currency when once deposited in a bank, it would seem to be the sound rule to regard 'all bank credits and all currency as one treasure chest, so that a claimant need only show that his money was converted into a credit with a bank or into cash, and that the trustee always thereafter had enough "cash", in the broad sense, to meet the trust obligation.' This also seems to be the view finally adopted by Shippen Lewis, who discusses the matter at some length in his article 'Tracing Mingled Trust Funds', appearing in the March issue of the Pennsylvania Bar Association Quarterly. With this view the court is in hearty accord."

The court found "that the $3,000 deposited in the 'special account' became mingled with the general funds and cash of the Bloomfield Trust Company,

including credits in other banks;" and that, nevertheless, the $3,000, should be transferred as a preferred claim to the Garfield Bank.

This case seems directly in point with the facts of the instant case.

A trust relationship having existed, the exceptant has sufficiently traced the trust res to allow it to get a preference.

If he has shown a trust relationship and has traced the funds into some account, or if the funds have been earmarked, then the cestui que trust has an equitable title which he can assert against the trust res, or if the original res has disappeared he may trace it against that which was substituted for the trust res. In the case of Freiberg et al. v. Stoddard, Assignee, 161 Pa. 259, 261, the court reiterates this principle:

"The general doctrine regarding the right to follow trust funds is thus stated in 2 Story, Eq. Jur. §§ 1258, 1259, 13th ed.: 'The general proposition which is maintained both at law and in equity upon this subject is, that if any property in its original state and form is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust or give the agent or trustee converting it, or those who represent him in right (not being purchasers for value without notice), any more valid claim in respect to it than they respectively had before such change. . . . It matters not in the slightest degree into whatever other form different from the original the change may have been made, whether it be that of promissory notes, or of goods, or of stock; for the product of the substitute for the original thing still follows the nature of the thing itself, so long as it can be ascertained to be such. The right ceases only when the means of ascertainment fails.' "

Although the contention of the Secretary of Banking is that, in the case before the court, if a trust is created, the exceptant has not sufficiently traced the funds as required under the cases which dwell on the tracing of trust funds, in this we do not agree, as hereinbefore indicated, and further discussion is therefore unnecessary.

There are numerous cases concerning the commingling of assets and the tracing of trust funds. In the case of Lifter v. The Earle Company, 72 Pa. Superior Ct. 173, the court held: "A party claiming preference to funds in the hands of a receiver of an involvent firm, on the ground that certain moneys belonging to it were paid to the insolvent as trustee, cannot recover as a preferred creditor, when the trustee deposited the funds in the general assets of the firm, and they are in no way identified as the property of the claimant."

The court further held: "A trust creditor is not entitled to preference over general creditors of the insolvent, merely on the ground of the nature of his claim. To authorize such a preference some specific, recognized equity, founded on the relation of the debt to the assets in the hands of the assignee or receiver, and which entitles the claimant to a preference out of those assets, must be established by evidence. The person claiming to be a trust creditor must, in order to establish his right to a preference, trace the trust money to some specific property or fund of the insolvent, and must identify the fund out of which he demands to be preferred, in distribution, either as the original trust property or as the product of it."

In the case of Thompson's Appeal, 22 Pa. 16, the court there held that: "Whenever a trust-fund has been wrongfully converted into another species of property, *if its identify can be traced* it will be held, in its new form, liable to the claim of the *cestui que trust*, which attaches to it until detached by the

superior equity of a bona fide purchaser, for a valuable consideration, without notice."

We are holding as well, apart from the general principles of law applied to the facts of the instant case, that Darby Bank and Trust Company was a trustee ex maleficio, created by reason of its wrongful act or that of its officer or officers in handling this transaction. Every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied, as well as when not so applied. The bank received the money from the building and loan association as agent, without authority to use it as its own, and the association did not lose its title thereto by the bank depositing it to its account, so long as it could be traced. According to the receipt it gave the association, the money was to be returned without interest if settlement was not made. The settlement was not made and the money was not returned, and for the bank to deposit it in its general funds as its property absolutely was a breach of trust ex maleficio pure and simple. It was a misappropriation, the money was the property of this exceptant for the purpose of the Bernhart mortgage, and general creditors should not be permitted to outrank in class the exceptant here, which has all the equities, especially where the creditors gratuitously have their fund puffed at the expense of these equities. That is not justice. The money belonging to the building and loan association was wrongfully included in the trust company's general assets, which were at all times sufficiently large to make good the amount due. To hold otherwise would be to sustain a fraud. No legal harm can result to depositors of this bank by withdrawing from funds now available for distribution the amount this claimant in equity is entitled to receive. Surely, and it bears reiteration, it would be most inequitable to take the money of the building association, made up as it is largely by the savings of the poor, and turn it over to the general depositors, who can show no title whatever to the same.

We think, that, notwithstanding the accountant has conceded this exceptant is at least entitled to be classed as a depositor, with all the legal rights of such in the distribution to be made under the partial account, it is our judgment that the building association and exceptant herein should be declared a preferred creditor in the full amount of its claim.

## Order

And, now, July 5, 1933, the above exceptions of Darby Building and Loan Association to the partial account of William D. Gordon, Secretary of Banking for the Commonwealth of Pennsylvania, in possession of Darby Bank and Trust Company, coming on to be heard by the court in banc, together with oral arguments and briefs, after due consideration thereof, the court doth order and decree that:

1. The exceptions filed to the first and partial account of William D. Gordon, Secretary of Banking for the Commonwealth of Pennsylvania, in possession of Darby Bank and Trust Company, by Darby Building and Loan Association, be and are hereby sustained.

2. The said Darby Building and Loan Association be and is hereby declared a preferred creditor in full amount of its claim; viz, $1,200, less any dividends which may have been appropriated thereto.